UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> KEVIN GEORGE MOON, <br> Defendant. | Case No. 13-cr-00817-JST-1 <br><br> **ORDER GRANTING MOTION TO MODIFY SENTENCE** <br><br> Re: ECF No. 53 |

Before the Court is Defendant Kevin George Moon's motion for compassionate release. ECF No. 53. The Court will grant the motion.

On September 5, 2014, Moon pleaded guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). ECF No. 20. On March 21, 2016, the Court sentenced Moon to the mandatory minimum 120 months of imprisonment and five years of supervised release. ECF No. 45. Moon is 52 years old, and is currently in custody at Butner Medium I FCI in Butner, North Carolina with a projected release date of July 31, 2021. ECF No. 53 at 1.

On August 14, 2020, Moon submitted a letter to the Court requesting appointment of counsel "to petition this Court for a compassionate release due to the severity of the coronavirus." ECF No. 51. Assistant Federal Public Defender Angela Hansen confirmed that she would represent Moon, ECF No. 52, and on September 17, 2020, Moon filed a motion to modify his sentence, ECF No. 53. Moon "moves the Court to convert his remaining months in custody to supervised release with a condition of home incarceration, to be followed by the originally ordered five-year term of supervised release, pursuant to 18 U.S.C. § 3582(c)." *Id.* at 1-2. He bases his motion on his suffering from a number of medical conditions, including those that "increase[] his

risk of severe illness or death from COVID-19." *Id.* at 3. Moon contends that his impending eligibility for home confinement and the dangerous conditions at Butner Medium I FCI also support his early release. *Id.* at 3-5; ECF No. 59 at 3-6. The government filed an opposition to this motion, ECF No. 58, to which Moon replied, ECF No. 59. The Government argues that Moon's motion should be denied because (1) his medical conditions do not present an extraordinary and compelling reason warranting release, ECF No. 58 at 11-14; and (2) he remains a danger to the community, *id.* at 14-16. For these reasons, the Government argues that the Section 3553(a) factors weigh against Moon's release. *Id.* at 16-17.

Moon brings his motion under "the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), which added a provision to allow defendants, not only the Director of the [Bureau of Prisons ('BOP')], to file a motion for reduction of sentence." *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1088 (N.D. Cal. Mar. 25, 2020). The Court may order the modification of an imposed prison sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons" warrant a modification, so long as the adjusted sentence remains "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). While "[g]eneral concerns" about the COVID-19 pandemic may be insufficient to establish "extraordinary and compelling reasons" for a sentence modification, *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1086 (N.D. Cal. Mar. 25, 2020), the parties do not dispute that "the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant a motion under 18 U.S.C. § 3582(c)(1)(A)," ECF No. 58 at 10. Here, Moon and the Government disagree about the extent of Moon's existing medical conditions. *Compare* ECF No. 53 at 2-4; ECF No. 59 at 2-3, *with* ECF No. 58 at 7, 11.

The Government acknowledges that the CDC has identified obesity as a medical condition that puts Moon "at risk for severe symptoms if he were to contract COVID-19," *id.* at 7, but it argues that with a BMI of 30.7, Moon is only "borderline obese" and asserts that "a person's

2

1  weight can fluctuate over time," *id.* at 11.  The Government does not address the other medical
2  conditions Moon describes, including high blood pressure, iron deficiency anemia, and
3  osteoarthritis.  This Court and others have concluded that obesity, and similarly severe health
4  conditions, in conjunction with the COVID-19 pandemic present "extraordinary and compelling
5  reason" to reduce a defendant's sentence.  *See, e.g.*, *United States v. Zeigler*, No. 15-cr-00347-
6  JST-1, 2020 WL 6481533, at *2-*3 (N.D. Cal. Oct. 28, 2020), *vacated in part, modified in part*,
7  No. CR 15-00347-JST-1, 2020 WL 6481530 (N.D. Cal. Nov. 4, 2020); *United States v. Moli*, No.
8  14-cr-00487-JST, ECF No. 45 (N.D. Cal. Oct. 13, 2020); *United States v. Coan*, No. 16-cr-00504,
9  2020 WL 4592828, at *2 (N.D. Cal. Aug. 7, 2020); *United States v. Brooks*, No. 07-cr-20047-JES-
10 DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (listing cases which have "granted
11 compassionate release where the defendant suffers from a serious condition that increases the
12 likelihood of severe consequences from COVID-19"); *United States v. Burrill*, 445 F. Supp. 3d 22,
13 27 (N.D. Cal. 2020) (granting motion for immediate release where the defendant "has effectively
14 demonstrated a nexus between his medical conditions and the ongoing pandemic which supports a
15 reduction under section 3582").

16 The Government offers no support for its argument that Moon's BMI is not a compelling
17 reason for his release merely because it is at the lower end of the range of BMIs that are defined as
18 obesity.  As the Government acknowledges, the CDC has clearly stated that having a BMI over 30
19 – which Moon has – increases a person's risk of severe illness from COVID-19.  *See* Ctrs. for
20 Disease Control and Prevention, "People with Certain Medical Conditions"
21 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
22 conditions.html#obesity (last visited Nov. 13, 2020).  And the cases the Government relies on for
23 its argument that the Section 3553(a) factors weigh against Moon's release involved defendants
24 who had significant time left on their original sentences.  *See* ECF No. 58 at 16-17 (citing *United*
25 *States v. Shayota*, No. 15-CR-00264-LHK-1, ECF No. 780 (N.D. Cal. May 26, 2020) (denying
26 compassionate release for defendant who served less than 6% of his custodial sentence); *United*
27 *States v. Furaha*, No. 09-CR-00742-JST-1, ECF No. 26 (N.D. Cal. May 8, 2020) (denying
28 compassionate release for defendant who served roughly 20% of his sentence); and *United States*

3

*v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (affirming denial of release where defendant had served less than half of his sentence)).  By contrast, the Government acknowledges that Moon "has served a substantial portion of his sentence, has only nine months remaining on [his] sentence, and is eligible for home confinement – the relief he seeks – in a few short months in January 2021."  ECF No. 58 at 17.

The Government also argues that Moon has failed to present an extraordinary and compelling reason for release because Butner Medium I FCI "currently has zero cases of inmates testing positive for COVID-19 and zero COVID-19-related deaths," *id.* at 14, and Moon plans to be released to Northern California which has "a significant number of COVID-19 cases and deaths," *id.* at 17.  This argument is unpersuasive for two reasons.  First, the Government misrepresents the full history of Butner Medium I FCI's experience with the pandemic.  The Bureau of Prisons reports three staff members who are currently positive with COVID-19, as well as 176 recovered inmates, 34 recovered staff, and nine inmates deceased from COVID-19, *see* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Nov. 13, 2020).  The "significant measures [taken] to protect the health of inmates" that the Government describes were insufficient to prevent the spread of COVID-19 at Butner.  ECF No. 58 at 11.  Second, the Government offers no evidence to support its implication that Moon is more likely to contract COVID-19 in Northern California than he is at Butler Medium I FCI.  Thus, notwithstanding the current infection numbers at Butner Medium I FCI, the combination of Moon's obesity and the risk of contracting COVID-19 there constitute an extraordinary and compelling reason for compassionate release.

The Government's remaining argument in opposition to Moon's motion is that Moon is a danger to the community, largely due to the seriousness of his offense conduct and his criminal history.  ECF No. 58 at 14-16.  The United States Sentencing Guidelines policy statement for a reduction in term of imprisonment under Section 3582(c)(1)(A) states that the court should only reduce a prison sentence if "the defendant is not a danger to the safety of any other person or to the community."  U.S. Sentencing Guidelines Manual § 1B1.13(1)(B)(2) (U.S. Sentencing Comm'n

2018).[1] The Court acknowledges Moon's criminal history. However, Moon has had no infractions or incident reports during his time in custody. ECF No. 53 at 4; ECF No. 53-1 at 30. He also took advantage of BOP programming available to him before the pandemic, including the Residential Drug Abuse Program. *Id.* The Court finds that in light of Moon's conduct while incarcerated, age, health, and the conditions of close supervision that will be imposed upon his release, Moon does not pose a danger to the community. A modified sentence in this case would satisfy the need to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

For these reasons, the Court GRANTS Moon's motion for compassionate release and the sentence of imprisonment is modified to time served. This order is stayed until Probation is able to secure a suitable bed at a Residential Reentry Center, and to allow sufficient time for safe travel and a period of quarantine, if necessary. *See* ECF No. 61 at 2.

Upon release, the remaining portion of Moon's original term of imprisonment shall be served as a special term of supervised release subject to the previously imposed conditions of supervised release imposed by the Court at sentencing on March 21, 2016, along with the special condition that Moon shall reside in a Residential Reentry Center, and shall observe the rules of that facility, for a period of six months or until the expiration of his original term of imprisonment,

/ / /

/ / /

---

[1] "Courts are split on whether section 1B1.13 continues to control, as it has not been updated since the passage of the First Step Act." *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.2 (N.D. Cal. 2020); *compare United States v. Cantu*, 423 F. Supp. 3d 345, 347-48 (S.D. Tex. 2019), *with United States v. Ebbers*, 432 F. Supp. 3d 421, 429-30 (S.D.N.Y. Jan. 8, 2020). "However, even courts which have found the provision to be outdated have held it continues to provide 'helpful guidance.'" *Burrill*, 2020 WL 1845788, at *1 n.2 (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

1  whichever is sooner.  Moon shall then complete the originally ordered five-year term of
2  supervised release imposed in the original sentence subject to the previously imposed conditions.
3  **IT IS SO ORDERED.**
4  Dated:  November 17, 2020



JON S. TIGAR
United States District Judge